UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X

ALEJANDRO BURILLO,                              :

                Plaintiff,        :        Civ. No.  05cv3493

    -against-                              :        **COMPLAINT**

CHUCK BLAZER and MULTISPORT           :
GAMES DEVELOPMENT, INC.,
                                                   :

                Defendants.
                                                   :
------------------------------------ X

       Plaintiff ALEJANDRO BURILLO, as and for his Complaint against the defendants, alleges as follows:

    1.    Plaintiff Alejandro Burillo is a citizen and resident of Mexico.

    2.    Upon information and belief, defendant Chuck Blazer ("Blazer") is a citizen of the State of New York.

    3.    Upon information and belief, defendant Multisport Games Development, Inc. ("Mulitsport") is incorporated under the law of the State of Delaware and maintains its principal place of business in the State of New York.

    4.    Subject matter jurisdiction is based on 28 U.S.C. § 1332(a) because there is complete diversity between the plaintiff and the defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

    5.    Venue is proper in this District based on 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to plaintiff's claims occurred in this District.

    6.    In or about August – September 2001, plaintiff and defendant Blazer

entered into negotiations concerning the possibility of plaintiff making an investment in Blazer's company, defendant Multisport.

7. Defendant Blazer advertised himself as a leading member of the international soccer world, and a prominent figure in international sports.

8. Defendant Blazer represented to plaintiff that Blazer owned 100 percent of the outstanding capital of Multisport.

9. Upon information and belief, defendant Blazer at all relevant times was the owner, principal and manager of defendant Multisport.

10. Defendant Blazer also represented to plaintiff that Multisport owned a 50 percent interest in Global Interactive Gaming, which was marketed and promoted to be a sports betting enterprise using interactive media.

11. On or about September 28, 2001, plaintiff executed an agreement in principle with respect to a "proposed investment" in Multisport that would provide plaintiff with a 30 percent voting equity interest in Multisport.

12. Plaintiff agreed to "advance to Multisport $1,500,000" and Multisport agreed to hold plaintiff's $1.5 million "as a deposit" and to credit the $1.5 million "against the amount, if any, which the parties subsequently agree shall be invested by Burillo in Multisport."

13. Plaintiff was to commence a due diligence review with respect to Multisport and the contemplated transaction. The parties' agreement in principle specified that plaintiff's "obligations will be subject to the completion, to Mr. Burillo's satisfaction, of the foregoing due diligence review, and the execution and delivery of mutually satisfactory definitive agreements."

14. The parties further agreed that if any of the advanced $1.5 million had not

been invested pursuant to a definitive agreement acceptable to and executed by plaintiff by December 31, 2001, "then such funds shall promptly be returned to Burillo."

15. Defendant Blazer specifically represented and agreed that he "unconditionally guarantees the prompt payment and enforcement of all Multisport's obligations under this letter."

16. On or about September 28, defendant Blazer sent a fax acknowledging the terms of the agreement in principle and the representations set forth therein, and stating that he was "grateful" for plaintiff's "subsequent transfer" of the $1.5 million pursuant to the parties' agreement.

17. On or about October 1, 2001, pursuant to the agreement in principle, and in reliance upon defendants Blazer and Multisports' explicit representations, plaintiff delivered the $1.5 million deposit to be held in escrow by Blazer.

18. Plaintiff wired his deposit of $1.5 million to a specific account in accordance with the agreement in principle as directed by defendant Blazer.

19. Plaintiff's $1.5 million deposit represented segregated and specifically identifiable funds that were to be held in escrow by defendant Blazer.

20. Plaintiff thereafter determined not to proceed with the proposed investment.

21. In or about January 2002, plaintiff requested defendant Blazer to return to plaintiff his $1.5 million deposit.

22. Defendant Blazer told plaintiff that he would return to plaintiff the $1.5 million deposit that he was holding.

23. On February 27, 2002, defendant Blazer sent an email confirming that

$500,000 would be returned "weekly over the next five weeks" and the "[d]uring that time we will work on a plan to provide you with a schedule for the remaining one million dollars."

24. On or about March 1, 2002, Blazer made the delivery of the first $100,000 to be returned to plaintiff.

25. On or about March 8, 2002, defendant Blazer made the delivery of the second $100,000 transfer back to plaintiff.

26. Defendant Blazer issued orders for the return of an additional $100,000 to plaintiff on each of March 25th, April 16th and May 13th, 2002.

27. Defendant Blazer thereafter personally made numerous promises and representations concerning his return of the remaining $1 million that defendants owed to plaintiff.

28. Defendants Blazer and Multisport have failed and refused, however, the return of the remaining $1 million that defendants received from, and owe to plaintiff.

## FIRST CLAIM

29. Plaintiff repeats herein each allegations set forth in paragraphs 1 through 28 of this Complaint.

30. Based on the foregoing, each of defendants Blazer and Multisport is liable to plaintiff for breach of contract in the amount of $1,000,000.

## SECOND CLAIM

31. Plaintiff repeats herein each allegations set forth in paragraphs 1 through 30 of this Complaint.

32. Based on the foregoing, defendant Blazer is liable to plaintiff for breach of his personal guarantee in the amount of $1,000,000.

## THIRD CLAIM

33. Plaintiff repeats herein each allegations set forth in paragraphs 1 through 32 of this Complaint.

34. Defendant Blazer, personally and/or as the owner and principal of defendant Multisport, benefited from and enjoyed the use of plaintiff's deposit of $1,500,000.

35. Based on the foregoing, each of defendants Blazer and Multisport is liable to plaintiff for conversion in the amount of $1,000,000, together with punitive damages in the amount of $1,000,000.

## FOURTH CLAIM

36. Plaintiff repeats herein each allegations set forth in paragraphs 1 through 35 of this Complaint.

37. Based on the foregoing, each of defendants Blazer and Multisport have been unjustly enriched and is liable to plaintiff in the amount of $1,000,000, together with punitive damages in the amount of $1,000,000.

WHEREFORE, plaintiff Alejandro Burillo demands that a Judgment be entered (i) on the First Claim awarding plaintiff, against each of defendants Chuck Blazer and Multisport Games Development, Inc., jointly and severally, the amount of $1,000,000; (ii) on the Second Claim, awarding plaintiff, against defendant Chuck Blazer, the amount of $1,000,000; (iii) on the Third and Fourth Claims, awarding plaintiff, against each of the defendants, jointly and severally, the amount of $1,000,000, together with punitive damages in the amount of $1,000,000; (iv) awarding plaintiff his costs and expenses; and (v) awarding such further relief as the Court deems proper.

Dated:  New York, New York

March 30, 2005

VANDENBERG & FELIU, LLP


By
Mark R. Kook (MK-6832)
110 East 42nd Street, Suite 1502
New York, New York 10017
(212) 763-6800

Attorneys for Plaintiff